FILED
2005 Mar-18 PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GINA BALLENTINE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 2:02-CV-1429-RDP** |
| } | |
| **LAUDERDALE COUNTY BOARD** } | |
| **OF EDUCATION,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Pending before this court is Defendant Lauderdale County Board of Education's (the "Board") Motion for Summary Judgment filed on April 30, 2003. (Doc. #9). On May 19, 2003, Plaintiff filed a request to extend the time in which to respond to the summary judgment motion (Doc. #13), which the court granted on May 21, 2003. (Doc. #14). On June 18, 2003, Plaintiff filed a second request for an extension of time (Doc. #15), which the court granted on that same date. On July 30, 2003, Plaintiff filed her opposition to summary judgment (Doc. #16). The Board filed its reply on August 25, 2003. (Doc. #19).

Plaintiff's Complaint against the Board alleges gender discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended. More specifically, Plaintiff complains that the Board failed to promote her to the position of the ten-month Assistant Principal at Central School ("Central") because she is female. (Doc. #1 ¶ 13). As discussed more fully below, the Board's Motion for Summary Judgment is due to be granted.

II.     FACTS[1]

The Board hired Plaintiff as a teacher in 1990. (Doc. #11 at Ex. 1 at 24-25). From her date of hire until the end of the 1994-95 school year, Plaintiff taught fourth grade students at Central. (*Id.* at 22). From the 1995-96 school year until November 2001, Plaintiff taught fifth grade students at Central. (*Id.* at 22-23). The record does not indicate Plaintiff's current status as a teacher at Central.

Plaintiff received her Master's in elementary education in 1993 and her Master's in Administration in 1999. (*Id.* at 86-88). Plaintiff also completed classes and training for the implementation of the Alabama Reading Initiative ("ARI") program. She became an instructor and taught the ARI program at Central School as well as at six other schools. (*Id.* at 55-56).

On August 2, 2001, the Board posted an opening for a ten-month Assistant Principal position for Central School. (Doc. #18 at Ex. 1). Plaintiff applied for the position by sending a letter of interest and resume to Jerry Fulmer, the Board Superintendent. (Doc. #18 at Ex. 2). Approximately seventeen people applied for the position. (Doc. #11 at Ex. 4 at 15).

Superintendent Fulmer reviewed the applications and selected the persons that would be granted an interview. (Doc. #11 at Ex. 4 at 15). The list of interviewees totaled seven people including Plaintiff and Mr. Helton. (Doc. #18 at Ex. 3).

Superintendent Fulmer testified that Plaintiff's experience in elementary education and the ARI program were both factors to be considered in filling the Assistant Principal vacancy. (Doc. #11 at Ex. 4 at 27-28). Plaintiff was the only applicant of those selected to be interviewed that was an instructor for the ARI program. (Doc. #18 at Ex. 1 at 56).

---

[1] The court views the facts in the light most favorable to Plaintiff, the non-movant.

The Principal of Central School, David Corl, decided to assemble an interview panel even though such had never been convened before in connection with an administrative position like assistant principal. (Doc. #11 at Ex. 4 at 26). Principal Corl had the power to recommend an individual for the ten-month Assistant Principal position without any committee assistance. (Doc. #11 at Ex. 4 at 32). However, Superintendent Fulmer told Principal Corl that there were no guidelines or policies against setting up an interview panel. (Doc. #11 at Ex. 4 at 25).

Principal Corl selected all members of the interview panel: Keith Morris, Becky Smith, Rhonda Harrell, and Melinda Daniel. (Doc. #11 at Ex. 2 at 34, 36-37). Principal Corl and the panel members conducted the interviews of the applicants with the panel members being limited to asking the same question of each applicant. (Doc. #11 at Ex. 2 at 39). Upon the completion of the interviews, Principal Corl recommended that Mr. Helton be selected for the ten-month Assistant Principal position. (Doc. #11 at Ex. 2 at 43). The Board received a letter of recommendation about Mr. Helton from Principal Corl. (Doc. #11 at Ex. 2 at 48).

The ten-month Assistant Principal position has a detailed job description including thirty-four bullet point items covering various job duties and responsibilities. (Doc. #18 at Ex. 4). Plaintiff had more experience than Mr. Helton in dealing with kindergarten through fourth grade students as Mr. Helton had no experience teaching at the elementary school level. (Doc. #11 at Ex. 2 at 59, 72). Principal Corl was aware of Plaintiff's experience at this level. (*Id.*) Plaintiff also had more experience that Mr. Helton in overseeing student activities, such as field trips. (Doc. #11 at Ex. 2 at 78). Additionally, Plaintiff had more experience interacting with the parents of students than Mr. Helton. (Doc. #11 at Ex. 2 at 76).

Plaintiff also had ARI training, which Mr. Helton did not have and Principal Corl was aware of that fact. (Doc. #11 at Ex. 2 at 54, 55, 77). Principal Corl acknowledged during his deposition that he thought it would be helpful if the person chosen for the position had ARI experience. (Doc. #11 at Ex. 2 at 54). With regard to several areas listed on the Assistant Principal job description, Principal Corl did not determine which of the applicants had more experience. (Doc. #11 at Ex. 2 at 75-79).

When Principal Corl asked Plaintiff to temporarily fill the Assistant Principal position while it was vacant, he had no problems with her performance. (Doc. #11 at Ex. 2 at 60-61). Mr. Helton also temporarily filled the position; however, Principal Corl never compared the two in the duties that they fulfilled while working on a temporary basis. (Doc. #11 at Ex. 2 at 80).

When Plaintiff learned that Mr. Helton had been selected to fill the Assistant Principal position, she told Principal Corl that the decision was not right because she had more education and experience that Mr. Helton. Upon being pressed further about the decision to promote Mr. Helton, Mr. Corl responded that he went with a "gut instinct." (Doc. #11 at Ex. 1 at 75-76).

Plaintiff subsequently filed a grievance. (Doc. #11 at Ex. 1 at 72; Doc. #18 at Ex. 5). The Board denied Plaintiff's grievance without a hearing and advised her that it lacked the authority to change anything concerning personnel matters absent some recommendation from the Superintendent. (Doc. #18 at Ex. 6).

### III.   STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick*

*v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert*

*Palace*, 539 U.S. at 101-02.

## IV.    DISCUSSION

### A.    Legal Background

The analysis of Plaintiff's failure to promote claim is based not only upon the nature of the allegations but also the type of the evidence offered in support of those claims. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318,1330 (11th Cir. 1998) (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  *Id.; see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." *Burns v. Gadsden State Community College*, 908 F.2d 1512 (11th Cir. 1990); *see Wright v. Southland Corp.*, 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as 'evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

Here, Plaintiff has attempted to present circumstantial evidence of gender discrimination. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this

6

circuit] use the now-familiar framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Combs*, 106 F.3d at 1527 (parallel citations omitted). Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *See id.* at 1527-28. The methods of presenting a *prima facie* case, as well as the exact elements of the case, are not fixed; rather, they are flexible and depend to a large degree upon the facts of the particular situation. *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Lincoln v. Board of Regents of Univ. Sys.*, 697 F.2d 928, 937 (11th Cir. 1983). A plaintiff may establish a *prima facie* case of disparate treatment employment discrimination by showing that she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[2] *McDonnell Douglas*, 411 U.S. at 802 (hiring); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); *see also Nix*, 738 F.2d at 1185 (discipline).

Once the plaintiff has shown a *prima facie* case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Combs*, 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254-55; *see Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). If the

---

[2] *See also McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not applicable in every respect in different factual situations.").

employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination is dispersed and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. When the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons. *Chapman*, 229 F.3d at 1024-25. Although the *prima facie* case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the *prima facie* case. *Combs*, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at. 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may defeat a summary judgment by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148-49 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion); *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524 (1993); *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir.

2000); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post-*Hicks* case law); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

    B.    **Plaintiff's Promotion Claim**

For purposes of summary judgment, the Board has conceded that Plaintiff has met her initial burden of establishing a *prima facie* case of failure to promote. (Doc. #10 at 14). The Board's arguments focus on the viability of Plaintiff's promotion claim and assert that she cannot rebut its legitimate non-discriminatory reasons for selecting Mr. Helton for the Central Assistant Principal position by establishing pretext. The Board also argues that Plaintiff is unable to present evidence that the Board's selection of Mr. Helton was motived by gender discrimination.

After studying the undisputed evidence contained in the record, the court is convinced that Plaintiff's promotion claim must fail. More specifically, Plaintiff is unable to point to any specific record support that demonstrates pretext in the Board's decision to promote Mr. Helton over her. Plaintiff's opposition places great emphasis on Principal Corl's creation of an interview panel as a subterfuge for discrimination, and generally seeks to challenge the overall decision-making process that led to the recommendation of Mr. Helton to the Board. However, Plaintiff has no evidence to support her subterfuge theory—she has only her conjecture and speculation. For example, Plaintiff does not contend that any of the mixed-gender panel members, including Principal Corl, made comments that would otherwise demonstrate a bias against promoting women, or against women in general. Moreover, the court does not see anything invidious about Principal Corl's desire to have input from other personnel in making his promotion recommendation to the Board, especially when no policy or procedure forbade such a practice. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether

9

employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged decision.") (citation omitted), *cert. denied*, 529 U.S. 1109 (2000). And, putting aside Plaintiff's rank speculation about why Principal Corl utilized the panel, it is undisputed that not one of the members of the mixed-gender panel selected Plaintiff as the first or second choice for the position. (Doc. #11 at Ex. 5 at Ex. B). One panel member ranked Plaintiff third, one panel member ranked her fourth, two panel members ranked her fifth, and one panel member ranked her sixth. (Doc. #11 at Ex. 5 ¶ 14; *id.* at Ex. B).

Plaintiff also heavily relies upon her and Principal Corl's deposition testimony in an effort to defeat summary judgment. For example, she points to certain areas in which she was more qualified than Mr. Helton. However, this evidence is insufficient to carry her burden in opposing summary judgment. As explained by the Eleventh Circuit in *Lee v. GTE Florida, Inc.*, 226 F.3d 1249 (11th Cir. 2000), *cert denied*, 532 U.S. 958 (2001), a plaintiff may not overcome summary judgment by asserting her own opinion about being better qualified or about second-guessing the employer's decision:

> [A]n employee's own opinions about h[er] . . . qualifications [do not] give rise to a material factual dispute . . . when two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.

*Id.* at 1254 (quoting *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321 (10th Cir. 1999)).

Based upon her arguments, it appears that Plaintiff believes she possessed superior qualifications to have received the Assistant Principal position in question over Mr. Helton. In their briefs, the parties have discussed the qualifications of Plaintiff versus Mr. Helton. The Board does

not dispute that Plaintiff is objectively qualified for the Assistant Principal job (for if she were not she would not even have been one of the candidates selected to be interviewed). Likewise, the Board acknowledges that she satisfies several relevant factors considered during the decision-making process such as her background in ARI training. However, the record shows that the Board is correct in noting that during the interview process Mr. Helton demonstrated impressive levels of confidence, people skills, and enthusiasm unlike any of the other candidates. (Doc. #11 at Ex. 5 ¶ 12; *id.* at Ex. 2 at 62).

It is Plaintiff who has the burden to establish that she was so much more qualified than Mr. Helton that the disparity virtually "jumps off the page and slaps one in the face." *Walker v. Prudential Prop. & Cas. Ins. Co.,* 286 F.3d 1270, 1277 (11th Cir. 2002). The phrase "jumps off the page and slaps one in the face" means that the disparities in qualifications must be of such weight and significance that no reasonable person could have chosen the candidate selected over Plaintiff.[3] *See Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000) (citing to Fifth Circuit decision in *Deines v. Texas Dept. of Protective and Regulatory Servs.*,164 F.3d 277 (5th Cir. 1999)), to affirm district court's instruction to jury stating that "'disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually

---

[3]This elevated standard for establishing discrimination based on the relative qualifications of the persons seeking a certain position serves the purpose of keeping the federal courts from second-guessing decisions made by employers in the course of their business. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."); *Deines*, 164 F.3d at 281 (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position . . . . The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.").

to jump off the page and slap you in the face."'). The case law in this Circuit in which this standard has been adopted evidences a careful policy choice made by our court of appeals. This high standard for establishing discrimination–which is based on the relative qualifications of the competitors for a promotion–serves the purpose of keeping the federal courts from second-guessing decisions made by employers in the course of their business. As the Eleventh Circuit explained in *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999), federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *See Deines v. Texas Dept. of Protective and Regulatory Services*, 164 F.3d 277, 281 (5th Cir. 1999) (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position.... The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination."); *see also Combs*, 106 F.3d at 1543 ("[F]ederal courts do not sit to second-guess the business judgment of employers. Stated somewhat differently, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer.").

  Here, Plaintiff has simply not met the high burden of establishing pretext in the promotion decision by presenting "slap you in the face" evidence. If anything, the interviews revealed that Mr. Helton was better qualified than Plaintiff, especially as it related to the areas of leadership, people skills, problem-solving skills, a positive attitude, enthusiasm an ability to be a team player, and the ability to interact and work well with students interviewing and personal skills. (Doc. #11 at Ex. 5 at ¶¶ 8-9; *id.* at Ex. A). Even if Plaintiff's belief that she is better qualified in other areas is true, that

is of no moment here. Principal Corl and the Board evaluated her qualifications and she cannot second-guess that evaluation unless she can make the showing required by *Lee* and *Walker*.

Nor does the Board's reliance upon subjective reasons for deciding to promote Mr. Helton over Plaintiff make the decision unlawful. In *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000) (en banc), the Eleventh Circuit flatly rejected the notion that subjective reasons provide less support for an employment decision than objective ones:

> It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation. To phrase it differently, subjective reasons are not redheaded stepchildren of proffered non-discriminatory explanations for employment decisions. Subjective reasons can be just as valid as objective reasons.

*Id.* at 1034 (citations omitted). The *Chapman* court further explained that so long as the reason articulated by the employer, be it subjective or objective, "is one that might motivate a reasonable employer, an employee must meet the reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* at 1030. Plaintiff has not met her burden in opposing summary judgment, and no reasonable jury, based on the summary judgment record in this case, could conclude that the Board's decision to promote Mr. Helton over Plaintiff was illegally motivated by gender.

### V.   CONCLUSION

As explained above, the court finds that there are no material facts in dispute, and that the Board is entitled to judgment as a matter of law. Accordingly, the Board's Motion for Summary Judgment is due to be granted, and Plaintiff's Complaint is due to be dismissed with prejudice. The court will enter an order consistent with this Memorandum Opinion granting the Board's Motion for Summary Judgment and dismissing Plaintiff's lawsuit with prejudice.

13

**DONE** and **ORDERED** this \_\_\_\_18th\_\_\_\_\_ day of March, 2005.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE